COMMONWEALTH of Kentucky,
Appellant

v.

Charles P. FARMER, Appellee.

No. 2013–SC–000120–DGE.

Supreme Court of Kentucky.

Feb. 20, 2014.

Jack Conway, Attorney General of Kentucky, Jason Bradley Moore, Assistant Attorney General, Counsel for Appellant.

R. Burl McCoy, Jr., Lexington, George Edward Nicholson, Ralph E. Meczyk, Robert J. White, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

Appellee Charles Farmer moved the Russell Circuit Court to dismiss an indictment charging him with one count of murder. He contended that he was legally justified to act in self-defense and therefore immune from prosecution under Kentucky Revised Statute ("KRS") 503.085. Following the denial of that motion, Farmer filed a notice of appeal to the Court of Appeals which subsequently held that it had jurisdiction to consider the appeal despite it being interlocutory. The Commonwealth sought discretionary review, arguing that the Court of Appeals lacked jurisdiction to consider Farmer's appeal from an interlocutory order denying him immunity in a criminal prosecution. We agree and reverse. The Court of Appeals is not authorized by our Constitution or statute to consider an appeal from an interlocutory order denying immunity pursuant to KRS 503.085, and furthermore, the collateral order exception to the finality doctrine does not apply in this circumstance.

### RELEVANT FACTS

On April 27, 2012, Charles Farmer shot and killed Daniel Popplewell who had entered Farmer's property wielding two large tobacco sticks. A Russell County grand jury indicted Farmer for one count of murder pursuant to KRS 507.020. Upon arraignment, Farmer entered a plea of not guilty and then filed a motion to dismiss the indictment, arguing that he was immune from prosecution under KRS 503–085(1)[1] because he had justifiably acted in self-defense. The Commonwealth filed a response to Farmer's motion to

1. KRS 503.085(1) provides: "A person who uses force as permitted in KRS 503.050, 503.055, 503.070, and 503.080 is justified in using such force and is immune from criminal prosecution and civil action for the use of such force, unless the person against whom the force was used is a peace officer, as defined in KRS 446.010, who was acting in the performance of his or her official duties and the officer identified himself or herself in accordance with any applicable law, or the person using force knew or reasonably should

dismiss as well as discovery materials for the trial court to consider in ruling on the motion. The trial court denied Farmer's motion to dismiss, finding that there was probable cause to believe that the use of force against Popplewell was unlawful, and thus Farmer was not entitled to immunity from prosecution based on self-defense.

When Farmer appealed the order denying his motion to dismiss to the Court of Appeals, that court ordered Farmer to show cause why his appeal should not be dismissed as interlocutory because a final and appealable judgment had not yet been entered by the trial court. After considering Farmer's response, the Court of Appeals rendered a 2–1 decision finding that Farmer had demonstrated sufficient cause to proceed with his interlocutory appeal. Addressing a question of first impression, specifically, whether an order denying immunity from prosecution pursuant to KRS 503.085 is immediately appealable, the Court of Appeals analogized Farmer's appeal to the civil context where this Court has recognized the right of a party to immediately appeal an order denying a motion to dismiss based on governmental immunity. *See Breathitt Cnty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 886 (Ky. 2009). The Court of Appeals reasoned that denying a criminal defendant the right to immediately appeal a denial of immunity would undermine the intent of KRS 503.085.

### ANALYSIS

### I. The Court of Appeals Lacked a Constitutional or Statutory Basis for Exercising Jurisdiction Over Farmer's Appeal From an Interlocutory Order in a Criminal Case.

 Jurisdiction is a threshold consideration for any court at any level of the Kentucky court system. "It is fundamental that a court must have jurisdiction before it has authority to decide a case." *Wilson v. Russell*, 162 S.W.3d 911, 913 (Ky.2005). Our state Constitution confers jurisdiction upon the Commonwealth's trial and appellate courts. *See* Ky. Const. §§ 109–113. In considering the jurisdiction granted to the Court of Appeals, we begin with Section 111(2) of the Kentucky Constitution, which provides the following:

> The Court of Appeals shall have appellate jurisdiction only, except that it may be authorized by rules of the Supreme Court to review directly decisions of administrative agencies of the Commonwealth, and it may issue all writs necessary in aid of its appellate jurisdiction, or the complete determination of any cause within its appellate jurisdiction. In all other cases, it shall exercise appellate jurisdiction as provided by law.

The "as provided by law" language in the second sentence of Section 111(2) authorizes the legislature to prescribe the appellate jurisdiction of the Court of Appeals. *Commonwealth v. Bailey*, 71 S.W.3d 73, 77 (Ky.2002); *see also Moore v. Commonwealth*, 199 S.W.3d 132, 138 (Ky. 2006), *Ballard v. Commonwealth*, 320 S.W.3d 69, 72–73 (Ky.2010). The General Assembly exercised this authority when it enacted KRS 22A.020, providing:

> (1) Except as provided in Section 110 of the Constitution, an appeal may be taken as a matter of right to the Court of Appeals from any conviction, final judgment, order, or decree in any case in Circuit Court, including a family court division of Circuit Court, unless such conviction, final judgment, order, or de-

have known that the person was a peace officer. As used in this subsection, the term "criminal prosecution" includes arresting; detaining in custody, and charging or prosecuting the defendant."

cree was rendered on an appeal from a court inferior to Circuit Court.

(2) The Court of Appeals has jurisdiction to review interlocutory orders of the Circuit Court in civil cases, but only as authorized by rules promulgated by the Supreme Court.

(3) Notwithstanding any other provision in this section, there shall be no review by appeal or by writ of certiorari from that portion of a final judgment, order or decree of a Circuit Court dissolving a marriage.

(4) An appeal may be taken to the Court of Appeals by the state in criminal cases from an adverse decision or ruling of the Circuit Court, but only under the following conditions:

(a) Such appeal shall not suspend the proceedings in the case.

(b) Such appeal shall be taken in the manner provided by the Rules of Criminal Procedure and the Rules of the Supreme Court, except that the record on appeal shall be transmitted by the clerk of the Circuit Court to the Attorney General; and if the Attorney General is satisfied that review by the Court of Appeals is important to the correct and uniform administration of the law, he may deliver the record to the clerk of the Court of Appeals within the time prescribed by the above-mentioned rules.

(c) When an appeal is taken pursuant to this subsection, the Court of Appeals, if the record so warrants, may reverse the decision of the Circuit Court and order a new trial in any case in which a new trial would not constitute double jeopardy or otherwise violate any constitutional rights of the defendant.

(5) Any party aggrieved by the judgment of the Circuit Court in a case appealed from a court inferior thereto may petition the Court of Appeals for a writ of certiorari.

Subsection (1), pertaining to appeals from convictions and final judgments, orders and decrees, embodies the bulk of the Court of Appeals' appellate jurisdiction. However, particularly relevant to our discussion are KRS 22A.020 (2) and (4). In those subsections, the General Assembly has limited the Court of Appeals' jurisdiction over the interlocutory orders of a circuit court. In "civil cases," KRS 22A.020(2) allows appellate jurisdiction over interlocutory orders but only as provided for in rules promulgated by this Court. In "criminal cases," the Commonwealth can appeal from an interlocutory "adverse decision or ruling" by the circuit court under certain conditions and in the manner provided for by court rules. KRS 22A.020(4). As for subsection (4), this Court has previously held that "KRS 22A.020(4) is uniquely for the benefit of the Commonwealth." *Commonwealth v. Nichols,* 280 S.W.3d 39, 42 (Ky.2009). Simply stated "there is no comparable provision for an [interlocutory] appeal by the [criminal] defendant." *Evans v. Commonwealth,* 645 S.W.2d 346–47 (Ky.1982).

Thus, looking at the Court of Appeals' jurisdiction as "authorized by law" in KRS 22A.020, it is apparent that in civil cases the General Assembly has granted this Court the authority to adopt rules governing the appeal of interlocutory orders. In short, the Court of Appeals has appellate jurisdiction in those civil matters as determined by this Court.[2] By contrast, there

---

**2.** Kentucky Rule of Civil Procedure (CR) 54.02 pertaining to orders in cases involving multiple parties or multiple claims and CR 65.07 regarding injunctions are two examples of civil rules providing for interlocutory appeals. As we noted in *Prater,* this Court can promulgate the rules referred to in KRS 22A.020(2) through our rule process, which

is no such authority in criminal matters. The Court of Appeals is not granted jurisdiction generally over interlocutory appeals in criminal cases, subject to this Court's rules or otherwise. Instead, the statute states the Commonwealth may appeal from an "adverse decision or ruling" of the circuit court and proceed "in the manner" provided for by this Court in our criminal rules or Supreme Court rules. As explained more fully below, we find this distinction in the treatment of interlocutory matters in civil and criminal cases significant but, for now, the most logical consideration is whether there is a basis elsewhere in the Kentucky Revised Statutes for the Court of Appeals exercising appellate jurisdiction in this matter.

 Turning to the self-defense statute under which Farmer claims immunity, it is clear that the General Assembly did not include a provision allowing for the interlocutory appeal of a denial of the claim to immunity provided in KRS 503.085. In *Rodgers v. Commonwealth,* 285 S.W.3d 740 (Ky.2009), this Court had the difficult task of determining how the legislature intended the courts to implement the immunity provided for in KRS 503.085. Although appellate review of the trial court's immunity determination was not addressed, it is helpful to consider what we inferred from the immunity statute regarding its implementation in the trial courts.

> Indeed, the only express indication of legislative intent is in KRS 503.085(2) which provides that immunity must be granted pre-arrest by the law enforcement agency investigating the crime unless there is "probable cause that the force used was unlawful." Because the statute defines the "criminal prosecution" from which a defendant justifiably

acting in self-defense is immune to be "arresting, detaining in custody and charging or prosecuting," we can infer that the immunity determination is not confined to law enforcement personnel. Instead, the statute contemplates that the prosecutor and the courts may also be called upon to determine whether a particular defendant is entitled to KRS 503.085 immunity. Regardless of who is addressing the immunity claim, we infer from the statute that the controlling standard of proof remains "probable cause." Thus, in order for the prosecutor to bring charges or seek an indictment, there must be probable cause to conclude that the force used by the defendant was not fully justified under the controlling provision or provisions of KRS Chapter 503. Similarly, once the matter is before a judge, if the defendant claims immunity the court must dismiss the case unless there is probable cause to conclude that the force used was not legally justified.

285 S.W.3d at 754. Because there was no guidance as to when and how the courts would determine the immunity issue, this Court crafted an answer that accounted for the fact that the district and the circuit courts generally each exercise jurisdiction over a felony prosecution at some point.

> Because immunity is designed to relieve a defendant from the burdens of litigation, it is obvious that a defendant should be able to invoke KRS 503.085(1) at the earliest stage of the proceeding. While the trial courts need not address the issue *sua sponte,* once the defendant raises the immunity bar by motion, the court must proceed expeditiously. Thus a defendant may invoke KRS 503.085 immunity and seek a determination at

results in the civil rules, or through "rulings of the Supreme Court of Kentucky announced in published decisions." 292 S.W.3d at 886 n. 1.

the preliminary hearing in district court or, alternatively, he may elect to await the outcome of the grand jury proceedings and, if indicted, present his motion to the circuit judge. A defendant may not, however, seek dismissal on immunity grounds in both courts. Once the district court finds probable cause to believe that the defendant's use of force was unlawful, the circuit court should not revisit the issue. In the case of a direct submission or where a defendant has elected to wait and invoke immunity in the circuit court, the issue should be raised promptly so that it can be addressed as a threshold motion.

285 S.W.3d at 755. The final question was how the trial court should proceed in determining probable cause, an issue this Court answered by rejecting a full-blown evidentiary hearing in favor of a judicial determination of probable cause based on the evidence of record such as witness statements, investigative letters prepared by law enforcement, photographs and other documents of record. *Id.*

As for an appeal from the trial court's determination, the immunity statute neither expressly nor impliedly provides for one. Clearly, in other contexts, our legislature has shown that it can and will provide for immediate appellate review of a significant threshold issue. *See* KRS 417.220 (providing statutory interlocutory appeal right as to order denying arbitration). There is no such appeal right in KRS 503.085 and we find no language in the statute from which we can infer such right. Ultimately, then, we find no constitutional or statutory basis for the Court of Appeals exercising its appellate jurisdiction over the interlocutory appeal in Farmer's criminal case. Of course, the Court of Appeals did not purport to rely upon constitutional or statutory provisions but premised its holding on precedent from this Court, civil case precedent we find

plainly inapplicable in this criminal context.

## II. *Breathitt County Board of Education v. Prater* Does Not, Indeed Cannot, Create a Right of Immediate Review of an Interlocutory Order Denying Immunity in a Criminal Prosecution.

■ In concluding that it had jurisdiction to consider Farmer's appeal, the Court of Appeals relied on this Court's recognition of a civil litigant's right to immediately appeal an order denying governmental immunity. In *Breathitt Cnty. Bd. of Educ. v. Prater,* 292 S.W.3d 883, Prater sued the Breathitt County Board of Education to recover for injuries she suffered while visiting her friend, a school employee who lived on the Board's property. *Id.* at 885. The friend was a school groundskeeper and, as a part of her employment contract, she resided in a house located behind a Breathitt County elementary school. *Id.* Prater asserted that the school board was negligent in its maintenance of the residence. *Id.* The Board filed a motion to dismiss on the ground that it was immune from a claim for damages brought in a court, as opposed to the Board of Claims. *Id.* Ultimately, this Court recognized that a litigant's right to immunity from defending a civil action entitles that immune party to be free from the costly burdens of litigation, and "such an entitlement cannot be vindicated following a final judgment for by then the party claiming immunity has already borne the costs and burdens of defending the action." *Id.* at 886. To that end, we agreed that an order denying absolute immunity is immediately appealable "even in the absence of a final judgment." *Id.* at 887.

The Court of Appeals applied the *Prater* logic in concluding that Farmer was entitled to immediate review of a denial of

immunity from prosecution under KRS 503.085(1). To bridge the gap between our holding in *Prater* and the denial of Farmer's claim of self-defense immunity, the Court of Appeals turned to our decision in *Rodgers v. Commonwealth,* wherein this Court stated that KRS 503.085 was "designed to relieve a defendant from the burdens of litigation." 285 S.W.3d at 755. As noted above, we further declared that "if the defendant claims immunity [under KRS 503.085] the court must dismiss the case unless there is probable cause to conclude that the force used was not legally justified." *Id.* at 754.

■ Having reviewed *Prater* and *Rodgers,* we reject the Court of Appeals' conclusion that the denial of immunity in the civil context is comparable to the denial of a criminal defendant's claim of immunity under the self-defense statute. We reached our determination in *Prater* after analyzing United States Supreme Court cases that recognize an exception to the final judgment rule in certain immunity cases. 292 S.W.3d at 886. In *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), for example, the Supreme Court addressed exceptions to 28 U.S.C. § 1291, the federal final judgment rule. The *Mitchell* decision reiterated the principle that a non-final decision of a court may be appealed when "it falls within that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 524–25, 105 S.Ct. 2806 (*quoting Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)). Under the "collateral order doctrine," orders may be immediately appealable when they implicate a right that can-

not be "effectively vindicated after the trial occurred." *Id.* at 525, 105 S.Ct. 2806 (*citing Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977)).

The essence of the *Mitchell* decision upon which *Prater* was premised, precisely that "the denial of a substantial claim of absolute immunity is an order appealable before final judgment," was based in part on a previous Supreme Court decision styled *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982). In *Nixon,* the Court addressed the "small class" of immediately appealable interlocutory orders falling within the collateral order doctrine. 457 U.S. at 742, 102 S.Ct. 2690. Those orders, the *Nixon* Court explained, "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and [are] effectively unreviewable on appeal from a final judgment." *Id.* (internal citations omitted).

In the years since the publication of *Mitchell* and *Nixon,* the Supreme Court has encountered a variety of cases invoking the collateral order doctrine. *See Lauro Lines s.r.l v. Chasser,* 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989); *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); *Digital Equipment Corp. v. Desktop Direct, Inc.,* 511 U.S. 863, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994). In 2006, the Supreme Court unanimously decided *Will v. Hallock,* 546 U.S. 345, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006), a case which closely scrutinized the limitations of the collateral order doctrine. The *Will* decision defined the driving force of collateral order jurisprudence as follows:

In each case, some particular value of a high order was marshaled in support of the interest in avoiding trial: honoring the separation of powers, preserving the efficiency of government and the initia-

tive of its officials, respecting a State's dignitary interests, and mitigating the government's advantage over the individual. *That is, it is not mere avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts when asking whether an order is "effectively" unreviewable if review is to be left until later.*

546 U.S. at 352–53, 126 S.Ct. 952 (emphasis supplied).

Despite the Court of Appeals' conclusion that the *Prater* logic must apply here, in fact the substantial public interest present in *Prater*, the very interest that established it as an exception to our final judgment rule under CR 54.01, is simply absent from the case at bar. In *Prater*, like *Mitchell*, the threatened disruption of government services due to the costs and burden of litigation presented a compelling public interest sufficient to entitle the Breathitt County Board of Education to immediate review of the trial court's denial of absolute immunity. *See Prater*, 292 S.W.3d at 887; *Will*, 546 U.S. at 352, 126 S.Ct. 952. Farmer's interest in asserting immunity and avoiding prosecution, on the other hand, is purely personal in nature.

▆▆ Equally obvious is the fact that the second element of the collateral order doctrine—that the challenged order decide "an important issue completely separate from the merits of the action," *Nixon*, 457 U.S. at 742, 102 S.Ct. 2690—simply does not apply where the issue is immunity from criminal prosecution based on the legally justified use of self-defense. In a trial where self-defense is an issue, the jury can only convict if it finds the statutory elements constituting the offense and further finds that the defendant was not privileged to act in self-defense. *See Estep v. Commonwealth*, 64 S.W.3d 805 (Ky. 2002). Thus, the immunity determination by the trial court—whether there is probable cause to believe the force used by the defendant was unlawful—is inextricably part of the merits of the case, *i.e.*, it goes directly to the defendant's criminal culpability.[3]

We thus agree with the Commonwealth that a majority of the elements of the collateral order doctrine are not met by the self-defense immunity issue at bar. *See Nixon*, 457 U.S. at 742, 102 S.Ct. 2690; *Puerto Rico Aqueduct & Sewer Authority*, 506 U.S. at 144, 113 S.Ct. 684 (internal citations omitted). The first element, that the order conclusively determine the disputed question, is met. However, the order denying immunity would not "resolve an important issue completely separate from the merits of the action," *Nixon*, 457 U.S. at 742, 102 S.Ct. 2690, nor would it, by allowing the prosecution to proceed, imperil a substantial public interest.

Even if an order denying a criminal defendant immunity based on self-defense could be shoehorned into the collateral order doctrine, we would still be constrained by our Kentucky Constitution and statutes. While this Court has full constitutional authority to prescribe "rules governing its

---

**3.** In *Crane v. State*, 281 Ga. 635, 641 S.E.2d 795 (2007), the Georgia Supreme Court encountered a similar question and reached the same conclusion, stating: "[The defendant in a murder trial] would be entitled to a verdict of acquittal if he established the defense of justification and the State failed to disprove the defense beyond a reasonable doubt. Thus, the ultimate issue in [the defendant's] motion to dismiss pursuant to OCGA § 16–3– 24.2 is the same as the ultimate issue at trial, whether he was justified in killing [the victim] or is guilty of the offense charged. That being so, the first requirement for application of the collateral-order exception, that the issue be substantially separate from the basic issue in the case, is not met in this case. Accordingly, this direct appeal from an interlocutory order must be dismissed." (Internal citations omitted).

appellate jurisdiction ... and rules of practice and procedure for the Court of Justice," Ky. Const. § 116, this Court cannot create interlocutory appeal jurisdiction for the Court of Appeals in a criminal case where neither the Constitution nor a statute allows for that jurisdiction. As emphasized above, in civil matters, Section 111 of the Constitution and KRS 22A.020 together result in wide latitude for this Court in addressing the Court of Appeals' jurisdiction over interlocutory appeals, but there is no such latitude "authorized by law" in criminal matters. Instead, the very limited interlocutory appeal right accorded the Commonwealth in KRS 22A.020(4) is all that our legislature has seen fit to authorize. That is not to say that a criminal defendant can never have an adverse pretrial KRS 503.085 immunity determination reviewed by a higher court, but under Kentucky law that review cannot be had as a matter of right by appeal.[4]

### *CONCLUSION*

For the foregoing reasons, the opinion of the Court of Appeals is reversed and this case is remanded to the trial court for further proceedings.

All sitting. All concur.

---

**4.** As quoted above, Section 111(2) of our Constitution gives the Court of Appeals jurisdiction to "issue all writs necessary in aid of its appellate jurisdiction, or the complete determination of any cause within its appellate jurisdiction." In *Crawley v. Kunzman*, 585 S.W.2d 387, 388 (Ky.1979), this Court held that the "right of appeal is not an adequate remedy against double jeopardy" and, thus, a defendant claiming double jeopardy precluded his retrial was entitled to seek review of the trial judge's determination by a writ of

prohibition. Whether an immunity determination adverse to a criminal defendant should be addressed by a higher court under the discretionary, and more stringent, writ standard is not an issue before us in this case but we note that other jurisdictions with similar statutes have allowed for pretrial review of immunity determinations via a writ or original action rule. *Wood v. People*, 255 P.3d 1136 (Colo.2011); *Peterson v. State*, 983 So.2d 27 (Fla.App.2008).